UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DOLEN GLENN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-00329-JPH-MJD |
| ) | |
| DICK BROWN Warden of WVCF, ) | |
| S. Zimmerman, ) | |
| ) | |
| Defendants. ) | |

**Order Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Dolen Glenn, an inmate of the Indiana Department of Correction ("IDOC"), brings his lawsuit pursuant to 42 U.S.C. § 1983 alleging that Defendants Richard Brown and Sandy Zimmerman retaliated against him and violated his right to free speech when he was confined at the Wabash Valley Correctional Facility ("WVCF"). Defendants' motion for summary judgment is fully briefed.[1] For the foregoing reasons, the motion for summary judgment is granted.

**I.    Motion for Summary Judgment**

**A.    Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can

---

[1] Mr. Glenn's motion for extension of time to file a surreply, dkt. [101], is **granted** to the extent that the Court has considered his surreply, dkt. 102, in its review of the motion.

1

also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

**B.      Facts**

The following statement of facts was evaluated pursuant to the standards set forth above. That is, the statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and disputed evidence are presented in the light reasonably most favorable to Mr. Glenn as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Mr. Glenn is an offender incarcerated within the IDOC and was housed at WVCF from 2011 to August 21, 2019. Dkt. 72-1 at 9. Prior to the events in this case, he had filed a federal lawsuit complaining that WVCF did not offer services for Orthodox Christians. Dkt. 72-1 at 14. He could not remember if Warden Brown was a defendant but knew that Ms. Zimmerman was not a party in that case. *Id.* Mr. Glenn had filed a variety of grievances while at WVCF, but he could not recall if any of the grievances related to Warden Brown or Ms. Zimmerman. *Id.*

At some point, Mr. Glenn had purchased a copy of the 2011 edition of IDOC's Operation of the Office of Internal Affairs Policy ("the OIA Policy") (00-01-103) from the law library. *Id.* at 18. As early as July 1, 2015, the OIA Policy has been restricted and confidential. Dkt. 72-5 at ¶ 5. According to Ms. Zimmerman, who is now an Intelligence Analyst with WVCF's Office of Investigations and Intelligence ("OII"), offenders and the public cannot access the OIA Policy because allowing "access would be detrimental to the safety and security of the facility." *Id.* The OIA Policy contains investigatory techniques, and dissemination of that information to offenders would impede OII's ability to investigate. *Id.* at ¶ 6. For example, offenders could use information from the policy to disrupt facility investigations, it would encourage "offenders to exploit or abuse perceived 'loopholes' or gaps" in the policy, and ultimately would threaten the safety and security of staff, visitors, the offender population, and the public. *Id.* at ¶¶ 7–9.

On June 14, 2017, during a search of Mr. Glenn's cell, certain pages from the 2011 edition of the OIA Policy were confiscated. Dkt. 39 at 5. Mr. Glenn received a conduct report for unauthorized possession of property. *Id.* On June 22, 2017, a disciplinary hearing was held. Dkt. 72-2. Ms. Zimmerman, who at the time was a Disciplinary Hearing Officer, facilitated the hearing and denied Mr. Glenn's request for a continuance, evidence, and witnesses. Dkt. 72-2; dkt. 72-1 at 29–30. According to the hearing report, the witness statements were denied because they were not requested at screening. Dkt. 72-2, dkt. 72-1 at 29. Mr. Glenn testified that Ms. Zimmerman denied the request for a continuance and for witnesses in a "really negative" manner, and that in denying the requests she told him, "You had possession of the policy. You're guilty." Dkt. 72-1 at 29–30. Mr. Glenn was found guilty of unauthorized possession of property. Dkt. 72-5 at ¶ 2; dkt. 72-2. He lost phone privileges for a month, was placed in disciplinary housing for 30 days, and lost 90 days of earned credit time. Dkt. 72-2.

On June 27, 2017, Mr. Glenn appealed the decision, and on July 24, 2017, Warden Brown denied his appeal. Dkt. 72-3. Mr. Glenn appealed that decision, and on January 3, 2018, his violation was dismissed and the sanction of deprivation of 90 days of earned credit time was rescinded. Dkt. 72-4. The letter rescinding the violation offered no explanation for the basis of the reversal. *Id.*

In 2019, Mr. Glenn was transferred from WVCF to Pendleton Correctional Facility ("PCF"). Dkt. 72-1 at 9–10.

Mr. Glenn has no evidence that Ms. Zimmerman denied the continuance or witnesses because of his previous lawsuits and grievances. Dkt. 72-1 at 30. Mr. Glenn has never heard Ms. Zimmerman talk about his cases or his grievances. *Id.* at 28. Mr. Glenn testified that another inmate heard Ms. Zimmerman speaking poorly about Mr. Glenn to another staff member, but he

4

did not provide an affidavit from this inmate (or any other witness). Mr. Glenn testified that Ms. Zimmerman told Mr. Glenn to stop helping other inmates with their lawsuits and once she told someone to "write up" Mr. Glenn for doing an inmate's legal work. *Id.* at 36–37. Mr. Glenn said Ms. Zimmerman "was always negative" towards him, and he did not know why. *Id.* at 31.

Mr. Glenn believes that Warden Brown's denial of his appeal was in retaliation for his lawsuits and grievances. When asked if he had evidence that the denial of his appeal had anything to do with his lawsuits or grievances, Mr. Glenn said, "Besides the clear-cut policy that showed that I was allowed it, but he denied it. And the Indiana constitution which flat out you can't – they can't make something retroactive. Only Congress can. And he should know that. The ethics code state that he is responsible to not violate the constitution of Indiana as being an employee of DOC." *Id.* at 24. Mr. Glenn said he had told Warden Brown and Ms. Zimmerman that he had used the OIA Policy in several habeas cases, and that when they changed the policy making the OIA Policy restricted they did not notify the inmates or law library. *Id.* at 18.

Mr. Glenn also believes that Warden Brown transferred him to PCF out of retaliation. With respect to a retaliatory motive for his transfer to PCF, Mr. Glenn said, "I'm here, ain't I?" meaning he believes he was transferred to PCF "for no reason." *Id.* at 20. Before his transfer, he had filed a public access request and had requested religious accommodations. *Id.* at 23. However, he never received responses for them and had no knowledge as to whether Warden Brown reviewed those requests. *Id.*

**C.    Discussion**

The defendants argue they are entitled to judgment in their favor because there is no evidence that Mr. Glenn's First Amendment activity was a motivating factor in their actions, and confiscation of the OIA Policy was reasonably related to legitimate penological objectives.

5

1. **Retaliation**

To prevail on his First Amendment retaliation claim, Mr. Glenn must establish three elements. "First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

Mr. Glenn's transfer from WVCF to PCF occurred in August 2019, more than a year after he filed this lawsuit. Mr. Glenn did not move to amend or supplement his complaint to allege that his transfer was an act of retaliation. Fed. R. Civ. P. 15. Thus, the transfer is not part of this lawsuit. However, the Seventh Circuit recently held that transfer from general population of one maximum-security prison to general population of another maximum-security prison was not an adverse action without evidence of additional aggravating factors, such as relocation to a much more restrictive or dangerous environment. *Holleman*, 951 F.3d at 881–82. Thus, even if he had amended or supplemented his complaint to include the prison transfer, Mr. Glenn's claim would fail on that element.

Turning to Mr. Glenn's disciplinary action, the parties do not dispute the first two elements of a retaliation claim. Filing grievances and lawsuits are activities protected by the First Amendment, *Holleman*, 951 F.3d at 878, and placement in segregation is a deprivation that is likely to deter First Amendment activity. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). So the outcome of Defendants' motion depends on whether Mr. Glenn has designated evidence

showing that protected conduct was at least a motivating factor of the adverse action. *Holleman*, 951 F.3d at 878.

Mr. Glenn must provide evidence that retaliatory animus was at least a "motivating factor" in the defendants' actions. *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). If Mr. Glenn can demonstrate that retaliatory animus was a motivating factor in the defendants' actions, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Id.* at 635. In other words, the defendants can rebut Mr. Glenn's prima facie case of retaliation "by showing that [their] conduct was not a necessary condition of the harm – the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the defendants can establish a non-retaliatory motive for the allegedly retaliatory action, Mr. Glenn must "produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).

Mr. Glenn produced no evidence that Ms. Zimmerman's actions at his disciplinary hearing were motivated by a retaliatory animus. He admitted he had no evidence that she denied his continuances or witnesses because of his lawsuits or grievances. Dkt.72-1 at 30. Mr. Glenn never heard Ms. Zimmerman talk about his cases or grievances. *Id.* at 28. Mr. Glenn complains that Ms. Zimmerman acted negatively towards him, but "his speculation regarding [her] motive cannot overcome the contrary evidence" that she found him guilty at the disciplinary hearing due to the potential danger of allowing inmates to have access to the OIA policy. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013).

Similarly, Mr. Glenn produced no evidence that Warden Brown was motivated by retaliatory animus when he denied Mr. Glenn's appeal. Warden Brown's denial of Mr. Glenn's appeal is not enough to show retaliatory animus, even if Mr. Glenn's disciplinary violation was

7

later rescinded. Warden Brown's denial was consistent with the fact that, at the time of Mr. Glenn's disciplinary hearing, inmates were not allowed to have copies of the OIA policy.

Further, the defendants produced evidence that they would have taken the same action despite any improper motive. Ms. Zimmerman found Mr. Glenn guilty of unauthorized possession of property. Dkt. 72-2. Warden Brown upheld that decision because there was sufficient evidence to support the finding at the hearing. Dkt. 72-3. As early as July 1, 2015, the OIA policy has been restricted and confidential because of security concerns. Dkt. 72-5 at ¶¶ 5–9. Accordingly, even if Mr. Glenn had shown a discriminatory motive—which he has not—the defendants have shown they would have taken the same action despite the motive.

Because Mr. Glenn has failed to show that his First Amendment activity was a motivating factor in the defendants' actions related to his disciplinary proceedings, both Warden Brown and Ms. Zimmerman are entitled to summary judgment on Mr. Glenn's retaliation claim.

### 2. Confiscation of the OIA Policy

Mr. Glenn's next claim is that he has a First Amendment right to have a copy of the 2011 OIA Policy. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 428 U.S. 78, 89 (1987). "Legitimate penological objectives include crime deterrence, prisoner rehabilitation, and internal prison security." *Bridges v. Gilbert*, 557 F.3d 541, 548 (7th Cir. 2009) (citing *Pell*, 417 U.S. at 822–23). The defendants argue that their confiscation of Mr. Glenn's OIA Policy is reasonably related to legitimate penological objectives.

> Several factors are relevant in reaching a determination [of the validity of a regulation], such as whether there is a connection between the regulation and a valid

8

>  and neutral government interest; whether there are alternative means of exercising a constitutional right; and the impact that accommodation of the asserted right will have on guards, inmates, and the allocation of prison resources.

*Bridges*, 557 F.3d at 548 (citing *Turner*, 428 U.S. at 89–90). Inmates who challenge the reasonableness of a prison regulation bear the burden of proving its invalidity. *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007). If a prison official has identified an institutional need that a regulation help resolves, the Court should defer to that decision since "that decision is 'peculiarly within the province and professional expertise of corrections officials.'" *Bridges*, 557 F.3d at 548 (quoting *Pell*, 417 U.S. at 827).

The Department of Correction has set forth a legitimate reason for restricting access to the OIA Policy. Disclosure of the policy would be detrimental to the safety and security of the staff and inmates because the policy contains investigatory techniques. Dkt. 72-5. Offenders aware of these techniques could try to disrupt facility investigations. *Id*. Further, Mr. Glenn takes issue with the fact that the 2011 edition of the policy was at one point not restricted. But the 2011 policy "contains many of the strategies and courses of action taken today by" investigators in the OII, including "the exact steps on how to investigate an incident, as well as information regarding surveillance equipment, the criminal activity force, interdiction efforts, mail room security, and telephone monitoring." Dkt. 93-2 at ¶¶ 6–7. Thus, there is a rational relationship between the restrictions on access to the earlier addition of the policy and the interest of maintaining safety in IDOC prisons.

Mr. Glenn has offered no legitimate reason for needing access to the policy. Considering the IDOC's legitimate need to protect the integrity and safety of its investigations by curtailing access to the policy, the defendants' motion for summary judgment on this claim is **granted**.

## II. Other Pending Motions

Because the Court has determined that restriction of the OIA policy is related to legitimate penological interests, the defendants' motion for protective order, dkt. [93], which sought to withhold both the 2011 and 2016 editions of the OIA policy, is **granted**. Mr. Glenn's motion for court to order discovery, dkt. [90], is **denied as moot**. That motion had asked for the defendants to provide the Court with a copy of the policy, which they did, and for other information that the defendants stated was already provided to Mr. Glenn or was being provided in a timely response to his request for discovery. Dkt. [92].

## III. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [71], is **granted**. The defendants' motion for a protective order, dkt. [93], is **granted**. Mr. Glenn's motion for discovery, dkt. [90], is **denied as moot**, and his motion for extension of time to file a surreply, dkt. [101], is **granted** to the extent that the Court considered his belated surreply in its consideration of the defendants' motion for summary judgment.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 11/5/2020

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DOLEN GLENN
860216
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel